Alan F. Blakley, Esq., CO Bar #44106
ab@lawpolaris.com
Samantha Peaslee, Esq., CO Bar #48709
speaslee@lawpolaris.com
Polaris Law Group
916 South Main Street, Suite 201
Longmont, CO 80501
Tel: (303) 557-6488
Fax: (303) 557:6487

Carey L. Melton, Esq., CA Bar #221923
carey@careymelton.com
Carey L. Melton Law, P.C.
4712 Admiralty Way, #1127
Marina del Rey, CA 90292
Tel: (310) 806-0699

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| RICHARD MORRILL<br><br>      Plaintiff,<br><br>vs.<br><br>GWEN STEFANI, PHARRELL WILLIAMS, BREAK OUT MY COCOON, LLC, d/b/a, HARAJUKU LOVER MUSIC, INTERSCOPE RECORDS, A DIV. OF UMG RECORDINGS, INC., and UMG RECORDINGS, INC.,<br><br>      Defendant | Case No.: 2:17-cv-07301-DMG-SK<br><br>FIRST AMENDED COMPLAINT AND JURY DEMAND |

1

2      NOW COMES RICHARD MORRILL by and through counsel Alan F.

3  Blakley, Esq. and Samantha Peaslee, Esq. of POLARIS LAW, LLC and Carey L.

4  Melton, Esq. of CAREY L. MELTON LAW, P.C. and for his Complaint alleges[1] as

5  follows.

6                        JURISDICTION AND VENUE

7      1.     This Court has jurisdiction over the subject matter of this litigation

8  pursuant to 17 U.S.C. § 501, 28 U.S.C. § 2201 as to a declaratory judgment, 28

9  U.S.C. § 1331, 28 U.S.C. § 1332, and 28 U.S.C. § 1367 because the other claims

10  are so related to the claims in the action within the original jurisdiction that they

11  form part of the same case or controversy under Article III of the United States

12  Constitution.

13      2.     This Court has personal jurisdiction over the Defendants who have

14  availed themselves to this jurisdiction by selling and performing the songs at issue

15  and other music within this jurisdiction such that they have more than minimum

16  contacts with the state of California and exercising personal jurisdiction over them

17  would not offend notions of fair play and substantial justice.

18      _____

19

20  [1] All allegations of fact anywhere in this Complaint are to be understood as applying
to all portions of this Complaint.

2

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District and a substantial part of property that is the subject of the action is situated in this District.

PARTIES

4.      Plaintiff Richard Morrill ("Richard"), also known as Richard Dean Morrill, is an individual residing in Colorado who currently resides in Littleton, Jefferson County, Colorado.

5.      Defendant Gwen Stefani ("Stefani") is a singer and songwriter whose current residence is in Los Angeles County, California.

6.      Defendant Pharrell Williams ("Williams"), is a rapper, songwriter, and producer whose current residence is in Los Angeles County, California.

7.      Defendant Harajuku Lover Music, also known as Break Out My Cocoon, LLC ("Harajuku"), is a California Limited Liability Company that owns the registered copyright PA0001951100 ("Copyright '100") for the music and lyrics of "Spark the Fire."  Its principal place of business is 1800 Century Park East, Suite 1000, Los Angeles, CA 90067.

8.      Defendant Interscope Records, A Div. of UMG Recordings, Inc. and UMG Recordings, Inc. (collectively "Interscope") are a Delaware Limited Liability Company that produces musical works and owns the registered copyright

3

1   SR0000754206 ("Copyright '206") for the sound recording of "Spark the Fire." Its

2   principal place of business is 2220 Colorado Ave., Santa Monica, CA 90404.

3

4                                          FACTS

5        9.     Richard is a songwriter and singer who was formerly in a band called

6   L.A.P.D.

7        10.    Richard owns copyright SR0000777322 ("Copyright '322"), Exhibit

8   A, for a sound recording and music entitled "Who's Got My Lightah" registered

9   with the United States Copyright Office on October 12, 2016.

10       11.    Richard owns copyright SR0000777325 ("Copyright '325"), Exhibit

11   B, for a sound recording and music entitled "Who's Got My Lighter" registered

12   with the United States Copyright Office on October 12, 2016.

13       12.    Richard wrote the music and lyrics for "Who's Got My Lightah" in

14   1996.

15       13.    Richard recorded "Who's Got My Lightah" in 1996. The date of first

16   publication of "Who's Got My Lightah" was March 3, 1996.

17       14.    Richard wrote the music and lyrics for "Who's Got My Lighter" in

18   2009. "Who's Got My Lighter" is a derivative work of "Who's Got My Lightah."

19       15.    Richard recorded "Who's Got My Lighter" in 2009. It was first

20   published on May 23, 2009.

16.     In 1997, Stefani went to Huntington Beach Beauty Supply in Huntington Beach, California and had Richard style her hair.

17.     After this, Richard stopped working at Huntington Beach Beauty Supply and began work at Splash Hair Salon in Huntington Beach, California.

18.     In 1998, Stefani went to Richard a second time, this time at Splash Hair Salon, and had Richard color her hair and style it.

19.     In 1998, Splash had a sound system through which one could play CD's.

20.     While styling Stefani's hair at Splash in 1998, Richard played a CD of "Who's Got My Lightah" over the Splash sound system for Stefani to hear.

21.     In 1998, after hearing "Who's Got My Lightah" at Splash, Stefani commented that she liked it and accepted Richard's offer of a CD with "Who's Got My Lightah" on it.

22.     The lyrics of the chorus of "Who's Got My Lightah" were: "Who's got my lightah? Going to find ya. Who's got my lightah? I'm right behind ya. Who's got my lightah? I'm going to find ya. Give it back, give it back."

22.     In 2009, Richard, now in Colorado, wrote another version of "Who's Got My Lightah," with a similar melody but different lyrics for the chorus. He named it "Who's Got My Lighter" or merely "Lighter."

23.   The lyrics of the chorus of "Who's Got My Lighter" were: "Who's got my lightah? Who got the fire? Who's got my lightah? Who's got my little lightah?" Fire is pronounced "fi-ya."

24.   In 2009, "Who's Got My Lighter", was recorded to CDs in Colorado and placed, in Colorado, on two Internet sites: the Myspace.com page of Richard's band, L.A.P.D., and the ReverbNation page for L.A.P.D. One need not subscribe to MySpace or ReverbNation to hear the songs on them.

25.   "Who's Got My Lighter" is still available on the ReverbNation L.A.P.D. page at https://www.reverbnation.com/lapdband/song/4362399-lighter.

26.   "Who's Got My Lighter" on MySpace has since been taken down.

27.   Richard promoted "Who's Got My Lighter" and the rest of the album on the L.A.P.D. Facebook page in 2010, linking directly to "Who's Got My Lighter" on Myspace.

28.   In 2014, Stefani copied the chorus from "Who's Got My Lighter" into another song, "Spark the Fire," which Stefani co-wrote with Williams.

29.   The chorus on Steffani's 2014 song, "Spark the Fire," is substantially similar to both "Who's Got My Lightah" and "Who's Got My Lighter."

30.   The lyrics to the chorus of "Spark the Fire" are: "Who got the lighter? Let's spark the fire. Who got the lighter? Let's spark the fire." This is repeated

1  once more. Lighter is pronounced "li-ta"; fire is pronounced "fi-ya." These are

2  identical to the rhyming sounds in "Who's Got My Lighter."

3      31.    The chorus of "Spark the Fire" is sung four times in the song.

4      32.    The rhythm, melody, background music, and accompanying bongo

5  drums (or bongo drum sounds) during the chorus of "Spark the Fire" is almost

6  identical to the chorus of "Who's Got My Lighter." They are sung in the same key

7  with similar tempo, timing, and bongo drums (or bongo drum sounds).

8      33.    "Spark the Fire" was released as a single on December 1, 2014.

9      34.    On December 15, 2014, Interscope registered the sound recording of

10  "Spark the Fire" with the copyright office, receiving Copyright '206.

11      35.    In an *Elle* interview on December 15, 2014, Stefani stated that while

12  Williams wrote much of "Spark the Fire," she is solely responsible for the "'spark

13  the fire' part," or the chorus that is substantially similar to the songs in Copyrights

14  '322 and '325.

15      36.    The chorus from "Spark the Fire" has been sung by Stefani or

16  supplied by Interscope Records and Harajuku Lover Music for others to sing or

17  play a recording on a November 2014 Fiat Gran Finale commercial, a December

18  2014 episode of NBC's "The Voice,"  a December 2014 MasterCard commercial,

19  a December 31, 2014 New Year's special, the 2014 People's Magazine Awards,

20

7

1    and on the trailer for season two of Fox's "Scream Queens." Upon information and

2    belief, it has been played and performed in additional contexts.

3        37.    On December 12, 2014, a friend who was familiar with Richard's

4    song "Who's Got My Lighter" sent Richard an e-mail with a link to a clip from the

5    TV show "The Voice" in which Gwen Stefani and Pharrell Williams performed

6    "Spark the Fire.".

7        38.    On December 13, 2014, Richard watched the clip of "The Voice"

8    featuring "Spark the Fire" and learned that Stefani had stolen his work.

9        39.    On December 19, 2014, Richard saw a MasterCard Commercial

10   starring Stefani singing "Spark the Fire."

11       40.    Prior to hearing about the Stefani clip from "The Voice" on December

12   12, 2014, Richard had no reason to suspect that Stefani had taken his copyrighted

13   work and claimed it as her own.

14       41.    On February 12, 2015, Copyright '100 for the music of "Spark the

15   Fire" was transferred to Harajuku.

16       42.    Defendants have made at least $25 million, directly and indirectly,

17   infringing Copyrights '322 and '325.

18                                CLAIM I

19        ALL DEFENDANTS' DIRECT COPYRIGHT INFRINGEMENT

20
                                    8

1    43.    Richard has valid copyrights for "Who's Got My Lightah" and

2   "Who's Got My Ligher" (collectively, "The Protected Works").

3    44.    Stefani had access to the Protected Works through CDs supplied

4   directly to Stefani, through Internet sites including MySpace, ReverbNation, and

5   Facebook, and through other avenues not yet discovered.

6    45.    Williams, Harajuku, and Interscope had access to the Protected Works

7   through Internet sites including MySpace, ReverbNation, and Facebook, through

8   Stefani, and through other avenues not yet discovered.

9    46.    "Spark the Fire" ("The Accused Song") infringe Richard's statutory

10  copyrights in "Who's Got My Lightah" and "Who's Got My Lighter".

11   47.    Stefani copied the music and lyrics of the chorus from "Who's Got

12  My Lighter" without Richard's authorization.

13   48.    Stefani and Williams created the Accused Song, a derivative work of

14  the Protected Works, without Richard's authorization.

15   49.    Harajuku owns the Accused Song, which is a derivative work of the

16  Protected Works.

17   50.    Stefani and Williams performed portions of "Who's Got My Lighter"

18  without Richard's authorization.

19

20

9

51.     Interscope created an unauthorized sound recording of the copies of the Protected Works and the Accused Song, which is the derivative work of the Protected Works.

52.     The copies, derivative works, performances, and sound recordings made by Defendants are substantially similar to the Protected Works.

53.     Defendants unlawfully and willfully copied all or a substantial part of the Protected Works in violation of Richard's statutory and registered copyrights in the the works.

54.     The Accused Song infringes Copyright '322.

55.     The Accused Song infringes Copyright '325.

56.     The Accused Song is substantially similar to the Protected Works with only minor and inconsequential modifications.

57.     The Accused Song copied the most innovative and distinctive features of the Protected Works, namely the chorus that is repeated throughout.

58.     The multiplicity of similarities between the Protected Works and the melody and lyrics of the Accused Song produced and provided to others by Defendants evidence an intent by Defendants to imitate and copy Richard's works.

59.     Defendants' unlawful and willful copying of Richard's Protected Works and the production and provision of the Accused Songs has caused Richard to suffer irreparable damages and lost profits.

10

CLAIM II

ALL DEFENDANTS' CONTRIBUTORY COPYRIGHT INFRINGEMENT[2]

60.     Each individual Defendant had actual knowledge that producing the Accused Song incorporating Richard's works would violate Richard's rights in the copyrighted property or had reason to know that producing the Accused Song would violate Richard's rights in the copyrighted property.

61.     Through the actions described above, each individual Defendant materially contributed to, induced, or substantially participated in the infringement and enabled the other Defendants to infringe.

62.     The contributory actions damaged Richard and caused him to lose substantial revenue.

---

[2] Each claim incorporates all elements of the other included claims.

11

CLAIM III

DEFENDANTS WILLIAMS AND INTERSCOPE'S VICARIOUS COPYRIGHT

INFRINGEMENT

63.     Williams, as co-writer and producer of the Accused Song, had the right and ability to supervise Stefani's contribution to the Accused Song.

64.     Williams did not supervise Stefani, therefore allowing her to copy the Protected Works and use them in the Accused Song.

65.     Williams enjoyed direct financial benefit from Stefani's copying of the Protected Works, the creation of a derivative work based on the Protected Works, the performance of the Protected Works, and the creation of a sound recording of the Protected Works.

66.     Interscope, as the record label of the Accused Song, has the right and ability to verify that the songs it records and produces do not violate others' copyrights.

67.     Interscope did not exercise this right and ability with regard to the Accused Song.

68.     Interscope has enjoyed direct financial benefit in the sale or licensing of the sound recording incorporating the Accused Song.

69.     Richard has suffered damages as a result of the infringement of his copyrights.

12

1

2

CLAIM IV

3

DEFENDANT STEFANI'S CONVERSION

4

70.    Stefani knowingly obtained control over Richard's property, namely

5    the Protected Works, by listening to his songs, mimicking them, and copying them

6    in the Accused Song both in the ones she sang, produced, and published and in

7    providing portions to others to be incoporporated into commercials.

8

71.    Stefani knew that the Protected Works and their uncopyrighted

9    elements had value.

10

72.    Richard did not authorize Stefani to copy, use, or create derivative

11    works of his Protected Works, only to listen to them.

12

73.    Stefani obtained control over the Protected Works with the specific

13    intent of permanently depriving Richard of the benefit of his exclusive and

14    proprietary rights in any uncopyrightable portions of his copyrighted works.

15

74.    Stefani's conduct constitutes conversion as described in California

16    case law.

17

75.    Richard has suffered damages as a result of Stefani's conversion of

18    the Protected Works.

19

20

13

1

DECLARATORY JUDGMENT

2      76.     An actual and justiciable controversy has arisen between Richard and

3  Defendants concerning whether any of Defendants' Accused Song infringes any

4  rights Richard has in his Protected Works.

5      77.     Absent a declaration that the Accused Song infringes Richard's

6  property rights, Defendants will continue wrongfully to produce, provide, and

7  profit from the Accused Song using the Protected Works in violation of the laws

8  and contrary to the public policy of the United States and continue to cause

9  Richard irreparable damages.

10      78.     Richard seeks a declaration that the Accused Song infringes Richard's

11  rights in his Protected Works.

12      79.     Richard is entitled to all reasonable litigation expenses and attorneys'

13  fees associated with the prosecution of this declaratory judgment action as it was

14  made necessary by Defendants' infringing behavior.

15

16

RELIEF SOUGHT

17  WHEREFORE RICHARD PRAYS for an Order of this Court:

18      A.     Enjoining Defendants from further appropriating and using Richard's

19  Protected Works;

20

14

1    B.    Ordering Defendants to pay to Richard all damages suffered by

2 Richard due to their unlawful acts, with prejudgment interest, as well as account

3 for and pay to Richard all gains and profits that they have enjoyed at Richard's

4 expense;

5    C.    Issuing a Declaratory Judgment that the Accused Song infringes

6 Richard's copyrights;

7    E.    Ordering Defendants to pay cost of corrective advertising necessary

8 due to harm to the exclusivity of the copyright and other misleading aspects of

9 Defendants' actions;

10    F.    Ordering Defendants to pay Richard's costs and attorneys' fees as

11 allowed by law; and

12    H.    Granting such other and further relief as this Court deems just.

13        Respectfully submitted, this 2nd day of November 2017.

14        */s/ Alan F. Blakley, Esq.*
          Alan F. Blakley
15        */s/ Samantha Peaslee, Esq.*
          Samantha Peaslee
16        Polaris Law, LLC
          916 South Main Street, Suite 201
17        Longmont, Colorado 80501
          303-557-6488
18        fax 303 557 6487
          ab@lawpolaris.com
19        speaslee@lawpolaris.com

20        */s/ Carey L. Melton*

15

1   Carey L. Melton Law, P.C.
    4712 Admiralty Way, #1127
2   Marina del Rey, CA 90292
    Tel: (310) 806-0699
3   carey@careymelton.com

4   Attorneys for Plaintiff

5

6

7

8

9

10

11

12

13   NOW COMES PLAINTIFF, RICHARD MORRILL, by and through

counsel of record and demands a trial by jury for all matters so triable in the

14   foregoing complaint.

15   Respectfully submitted, this 2nd day of November 2017.

16

17   */s/ Alan F. Blakley, Esq.*
    Alan F. Blakley
    */s/ Samantha Peaslee, Esq.*
18   Samantha Peaslee
    Polaris Law, LLC
19   916 South Main Street, Suite 201
    Longmont, Colorado 80501
20   303-557-6488

16

1                   fax 303 557 6487
ab@lawpolaris.com

2                   speaslee@lawpolaris.com

3                   */s/ Carey L. Melton*
Carey L. Melton Law, P.C.

4                   4712 Admiralty Way, #1127
Marina del Rey, CA 90292

5                   Tel: (310) 806-0699
carey@careymelton.com

6

7                   Attorneys for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20