Peter J. Anderson, Esq., Cal. Bar No. 88891
E-Mail: pja@pjanderson.com
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
100 Wilshire Boulevard, Suite 2010
Santa Monica, CA 90401
Tel: (310) 260-6030
Fax: (310) 260-6040

Attorney for Defendants
GWEN STEFANI, PHARRELL WILLIAMS,
BREAK OUT MY COCOON, LLC and
UMG RECORDINGS, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| RICHARD MORRILL,<br><br>Plaintiff,<br><br>vs.<br><br>GWEN STEFANI, PHARRELL WIL-LIAMS, BREAK OUT MY COCOON, LLC, d/b/a HARAJUKU LOVER MU-SIC, and INTERSCOPE RECORDS, A DIV. OF UMG RECORDINGS, INC., and UMG RECORDINGS, INC.,<br><br>Defendants. | Case No. 2:17-cv-07301-DMG-SK<br><br>DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT<br><br>[Fed. R. Civ. P. 56]<br><br>Date: September 21, 2018<br>Time: 3:00 p.m.<br><br>Courtroom of the Honorable<br>Dolly M. Gee<br>United States District Judge |

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES.................................................1

1.    INTRODUCTION .......................................................................................1

    (a)    Preliminary Statement.....................................................................1

    (b)    Summary of Argument....................................................................2

2.    SUMMARY JUDGMENT SHOULD BE GRANTED ...............................5

    (a)    The Standards Governing this Motion.............................................5

        (1)    The Summary Judgment Standards .................................5

        (2)    The Extrinsic Test Applicable to Copyright Claims ......5

    (b)    Plaintiff Concedes that His 1996 *Lighter* and 2009 *Lighter* Are Not Substantially Similar to *Spark the Fire* in Melody, Harmony, Pitches and Other Elements Typical of Musical Compositions ..............8

    (c)    Plaintiff's Claimed Similarities A, B and C Fail to Raise a Genuine Issue as to the Alleged Infringement of His 1996 *Lighter* Copyright .....9

        (1)    "Similar Feature A": Lyrics and their Rhythm and Placement ...10

        (2)    "Similar Feature B": a Short Rhythm Divorced of Melodic or Other Similarity and Used Differently in the Compositions .......13

        (3)    "Similar Feature C": the Presence of Tritones, *i.e.,* the Idea of Separating Two Successive Pitches by Three Whole Tones.......14

        (4)    "Similar Features" A, B and C Are Not an Original Selection and Arrangement of "Numerous" Elements...............................16

        (5)    The Differences Between 1996 *Lighter* and *Spark the Fire* Far Outweigh the Three Trivial Claimed Similarities.................18

    (d)    Plaintiff's Claimed Similarities A, D and E Fail to Raise a Genuine Issue as to the Alleged Infringement of His 2009 *Lighter* Copyright ...19

        (1)    "Similar Feature A": the Same Similarity that Plaintiff's Expert Finds in 1996 *Lighter*.................................................................19

(2) "Similar Feature D": the Use of Triplets, *i.e.,* the Idea of Three Notes in the Time Normally Allotted to Two Notes.........20

(3) "Similar Feature E": the Idea of Combining Pairs of Similar Short Lyrics with the Same Rhythm.............................................21

(4) "Similar Features" A, D and E Also Are Not an Original Selection and Arrangement of "Numerous" Elements................22

(5) The Differences Between 2009 *Lighter* and *Spark the Fire* Also Far Outweigh the Claimed Similarities..............................23

(e) Plaintiff's Claims for Contributory and Vicarious Copyright Infringement Fall with His Claim for Direct Infringement ...................24

3.   CONCLUSION ......................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ........................24

*Allen v. Destiny's Child*, No. 06 C 6606, 2009 WL 2178676
  (N.D. Ill. July 21, 2009) ................................................................................7

*Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435 (9th Cir.1994)......... 7, 13, 25

*Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828 (9th Cir. 2011) ...................11

*Batts v. Adams*, No. CV 10-8123-JFW (RZX), 2011 WL 13217923
  (C.D. Cal. Feb. 8, 2011) ........................................................................ 16, 17

*Berg v. Kincheloe*, 794 F.2d 457 (9th Cir. 1986) ....................................................5

*Cavalier v. Random House, Inc.*, 297 F.3d 815 (9th Cir. 2002) .................................5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)........................................................5

*CMM Cable Rep, Inc. v. Ocean Coast Props.*, 97 F.3d 1504 (1st Cir.1996)..............7

*Connor Bowen v. Paisley*, No. 3:13-CV-0414, 2016 WL 4480165
  (M.D. Tenn. Aug. 25, 2016) .............................................................. 2, 11, 12, 15

*Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984) ..................................1

*Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311 (9th Cir. 1995)................. 11, 14

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991)................ 6, 7, 11, 15

*Flynn v. Surnow*, No. CV 02-9058-JFW PLAx, 2003 WL 23411877
  (C.D. Cal. Dec. 9, 2003).................................................................................17

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072
  (9th Cir. 2006) ................................................................................ 18, 24

*Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815 (C.D. Cal. 2010),
  *aff'd sub nom. Gable v. Nat'l Broad. Co.*, 438 F. App'x 587 (9th Cir. 2011) ........17

*Gaste v. Kaiserman*, 863 F.2d 1061 (2d Cir. 1988) ..................................................8

*Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377 (Fed. Cir. 2007) ...................................7

*Jean v. Bug Music, Inc.*, No. 00 CIV 4022 (DC), 2002 WL 287786
  (S.D.N.Y. Feb. 27, 2002) .................................................................................7

iii

*Johnson v. Gordon*, 409 F.3d 12 (1st Cir. 2005).............................. 11, 14, 19, 21, 25

*Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042 (9th Cir. 1994)............6, 24

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140
  (9th Cir. 2003) .................................................................................................17

*Litchfield v. Spielberg*, 736 F.2d 1352 (9th Cir. 1984)...............................................17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)...................5

*Metcalf v. Bochco*, 294 F.3d 1069 (9th Cir. 2002) ............................................. 16, 17

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005)............24

*Narell v. Freeman*, 872 F.2d 907 (9th Cir. 1989).........................................................7

*Newton v. Diamond*, 204 F. Supp. 2d 1244 (C.D. Cal. 2002)..................................7, 8

*Northern Music Corp. v. King Record Distrib. Co.*, 105 F. Supp. 393
  (S.D.N.Y. 1952) ...............................................................................................13

*Pasillas v. McDonald's Corp.,* 927 F.2d 440 (9th Cir.1991) .....................................18

*Peters v. West*, 692 F.3d 629 (7th Cir. 2012) .............................................................12

*Rentmeester v. Nike, Inc.*, 883 F.3d 1111 (9th Cir. 2018)............................................6

*Rice v. Fox Broad. Co.*, 330 F.3d 1170 (9th Cir. 2003) ........................... 7, 13, 21, 25

*Rice v. Fox Broadcasting Co.*, 148 F. Supp. 2d 1029 (C.D. Cal. 2001),
  *rev'd on other grounds*, *Rice,* 330 F.3d 1170 ............................................6

*Rice v. Fox Broadcasting Co.*, 330 F.3d 1170 (9th Cir. 2003)......................................6

*Russell v. Price*, 612 F.2d 1123 (9th Cir. 1979).......................................................20

*Samuels v. Holland Am. Line-USA Inc.*, 656 F.3d 948 (9th Cir. 2011) .....................11

*Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*,
  562 F.2d 1157 (9th Cir. 1977)..........................................................................6

*Smith v. Jackson*, 84 F.3d 1213 (9th Cir. 1996) ....................................... 8, 14, 15, 21

*Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004).................................................. 6, 7, 9

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000) ........................6, 18

*Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980 (9th Cir. 2017) ...................19

**Statutes**

17 U.S.C. § 101......................................................................................................19

17 U.S.C. § 102.......................................................................... 7, 12, 15

17 U.S.C. § 103.......................................................................... 19, 22

**Other Authorities**

OXFORD ENGLISH DICTIONARY ...................................................................12

**Rules**

Federal Rule of Civil Procedure  1 ...............................................................5

Federal Rule of Civil Procedure 12 ..............................................................1

Federal Rule of Civil Procedure 56 ..............................................................5

**Treatises**

M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT (2018)..........................................8

R. S. ROSEN, MUSIC & COPYRIGHT (2008) ...................................................9

**Regulations**

COPYRIGHT OFFICE & PROCEDURES, 37 C.F.R. § 202.1 ...............................................8

COPYRIGHT OFFICE & PROCEDURES, 37 C.F.R. § 313.4 ...............................................8

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION

### (a) Preliminary Statement

Defendants Gwen Stefani, Pharrell Williams, Break Out My Cocoon, LLC ("Cocoon") and UMG Recordings, Inc. ("UMG")[1] respectfully submit this Memorandum in support of their Motion for Summary Judgment.

Plaintiff Richard Morrill is a hair stylist who performed in heavy metal bands. He claims that he is the author of two recorded compositions about someone stealing his lighter and that he played them for Ms. Stefani when she supposedly had her hair done in salons where he claims to have worked in 1996 and 2009. He filed this action in a district court in Colorado, claiming that the lyrics "Who got the lighter, Let's spark the fire," in Ms. Stefani's *Spark the Fire* infringed his copyrights by copying his lyrics about his lost lighter.

After this action was transferred here and pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court dismissed plaintiff's claims for infringement of the lyrics in his musical compositions; dismissed his state law claim for conversion; and dismissed, with leave to amend that plaintiff chose not to exercise, his claims for infringement of his sound recording copyrights. Feb. 13, 2018 Order (Doc. 95) *re* Motions to Dismiss ("Feb. 13, 2018 Order") at 6-11, 12-14; Pltf's Notice of Non-Amendment (Doc. 100) at 2. Although plaintiff's complaint focused on the claimed copying of lyrics, he included a paragraph alleging that melody and other musical elements of his works had been copied. FAC at 7, ¶ 32. Based on that allegation, the Court declined to dismiss at the pleading level his claim for infringement of those musical elements. Feb. 13, 2018 Order at 11-12.

---

[1] Plaintiff purports to sue UMG and Interscope Records as separate defendants even though he acknowledges Interscope Records is just a division of UMG. First Amended Complaint (Doc. 77) ("FAC") at 1:17-19 & 3, ¶ 8; *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 770 (1984) ("the operations of a corporate enterprise organized into divisions must be judged as the conduct of a single actor").

1

Mindful of the Court's admonition that "[p]arties need not wait until the motion cutoff to bring motions for summary judgment"[2] and the weakness of plaintiff's claims, and to avoid the cost and delay of fact discovery that will be rendered moot if plaintiff cannot establish substantial similarity, the parties agreed to early expert disclosures and expert discovery cut-offs as to the extrinsic test applicable to copyright infringement claims.[3]  Those disclosures and that discovery have been completed and those cut-offs have passed.  Accordingly, defendants now move for Summary Judgment on what remains of plaintiff's case: his claims for direct, contributory and vicarious copyright infringement based on the alleged copying of music in his 1996 composition, "Who Got My Lightah" ("1996 *Lighter*"), and his 2009 derivative version, "Who Got My Lighter" ("2009 *Lighter*").

**(b)**   **Summary of Argument**

It is an understatement that 1996 *Lighter* and 2009 *Lighter* are not substantially similar to *Spark the Fire* under the extrinsic test.  They are dramatically different in every respect.  In an attempt to avoid summary judgment, plaintiff relies on an expert witness who is well-known for exaggerated assertions about trivial "similarities" she fails to substantiate.[4]  Indeed, defendants' Motion is largely based on the deposition testimony of plaintiff's own expert, in which she admitted that the similarities she found are fragmentary, are expressed differently in the works and appear in prior art that she did not research and does not contest.

---

[2]    Initial Standing Order (Doc. 59) at 6:4-5.

[3]    Stipulation (Doc. 98) & Order (Doc. 99) as to early expert disclosures and discovery as to extrinsic test; Stipulation (Doc. 107) and Order (Doc. 108) extending those dates at plaintiff's request.

[4]    For example, in *Connor Bowen v. Paisley*, No. 3:13-CV-0414, 2016 WL 4480165 (M.D. Tenn. Aug. 25, 2016), plaintiff's expert, Ms. Judith Finell, as here, conceded no similarity in melody and other usual elements and relied instead on a few common words, supposed parallel phrases and other unprotected "similarities." *Id.* at *5-6.  The district court concluded "that these purportedly distinctive similarities essentially fall apart upon closer inspection." *Id.* at 11-13.

2

Plaintiff's expert conceded in her reports and at her deposition that there are no substantial similarities between the melody, harmony, musical notes, pitches, sequence of pitches and other elements of 1996 *Lighter* and 2009 *Lighter*, on the one hand, and *Spark the Fire*, on the other hand. *See, below* at 8-9. Instead, plaintiff's expert claims that 1996 *Lighter* and 2009 *Lighter* each share three "Similar Features" with *Spark the Fire*. But these claimed similarities are banal and plaintiff's expert admits they are expressed differently and appear in prior art.

The three similarities plaintiff contends appear in 1996 *Lighter* and *Spark the Fire* are:

1. "Similar Feature A": Lyrics that the Court already ruled are not substantially similar under the extrinsic test, plus the uncopyrightable fact that lyrics rhyme and "fire" is pronounced as two syllables – "fi-ah" – and the presence of a bare, unpitched long-short-long rhythm that plaintiff's expert admits is a fragment of longer, different rhythms appearing in different parts of 1996 *Lighter* and *Spark the Fire*, is commonplace and predates 1996 *Lighter*. *See, below* at 10-13.

2. "Similar Feature B": The presence of a bare, unpitched five-note rhythm that plaintiff's expert admits is different in 1996 *Lighter* and in *Spark the Fire*, is associated with different lyrics in those compositions, appears in different parts of those compositions and is extracted from a longer, different rhythm in 1996 *Lighter*, and that also is commonplace and predates 1996 *Lighter*. *See, below* at 13-14.

3. "Similar Feature C": The presence of tritones – that is, separating two pitches by three whole tones – but with different pitches beginning and ending this three-tone separation in 1996 *Lighter* and *Spark the Fire*, leaving only the shared and unprotected idea of separating pitches by three tones, which plaintiff's expert also concedes predates 1996 *Lighter*. *See, below* at 14-15.

3

Neither does the claimed presence of these three "Similar Features" in 1996 *Lighter* and *Spark the Fire* support a claim for the alleged copying of an original and protected selection and arrangement: the similarities are random rather than selected and arranged, and three claimed similar elements falls short of the required numerous elements. *See, below* at 16-18. Ultimately, 1996 *Lighter* and *Spark the Fire* are very different musical compositions and those differences far outweigh the trivial claimed similarities. *See, below* at 18-19.

The three similarities that plaintiff contends appear in 2009 *Lighter* and *Spark the Fire* are:

1.    "Similar Feature A": This claimed similarity from 1996 *Lighter* is not only unprotected, but because it appears in plaintiff's 1996 *Lighter* it is irrelevant to plaintiff's alleged derivative copyright in 2009 *Lighter*, which only protects original material added to 1996 *Lighter*. *See, below* at 19-20.

2.    "Similar Feature C": The presence of triplets – that is, the rhythm of three notes in the time normally allotted for two notes – but which plaintiff's expert admits appear in different places and with different lyrics in 2009 *Lighter* and *Spark the Fire*, leaving only the uncopyrightable idea of three notes sounding in the time normally allotted two notes, which plaintiff's expert also admits is commonplace and predates plaintiff's compositions. *See, below* at 20-21.

3.    "Similar Feature E": Pairing a short lyric with another short lyric with the same rhythm. However, plaintiff's expert again relies on lyrics the Court has already ruled are not substantial similarities, and plaintiff's expert admits those lyrics are set to different rhythms in 2009 *Lighter* and *Spark the Fire* and that pairing phrases is a commonplace practice in popular music and predates plaintiff's compositions. *See, below* at 21-22.

4

The claimed presence of "Similar Features" A, D and E in 2009 *Lighter* and *Spark the Fire* also fails to establish a claim for the copying of an original and protected selection and arrangement (*see, below* at 22-23) and, ultimately, 2009 *Lighter* and *Spark the Fire* are very different musical compositions (*see, below* at 23-24).

There is no genuine dispute that plaintiff fails to establish substantial similarity under the extrinsic test, and summary judgment is appropriate.

**2.      SUMMARY JUDGMENT SHOULD BE GRANTED**

**(a)      The Standards Governing this Motion**

**(1)      The Summary Judgment Standards**

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986), *quoting* Fed. R. Civ. P. 1.

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  Once the movant shows it is entitled to summary judgment, the burden shifts to the nonmoving party to establish genuine issues exist as to material facts.  *Celotex*, 477 U.S. at 324.  The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" (*Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986)) and "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**(2)      The Extrinsic Test Applicable to Copyright Claims**

"To establish a successful copyright infringement claim, a plaintiff must show that he or she owns the copyright and that defendant copied protected elements of the work." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).  That "second element has two distinct components: 'copying' and 'unlawful appro-

5

priation.'" *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018), *quoting Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164–65 (9th Cir. 1977). "The mere fact that a work is copyrighted does not mean that every element of the work may be protected." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991). Instead, "[t]o prove unlawful appropriation, . . . the similarities between the two works must be 'substantial' and they must involve protected elements of the plaintiff's work." *Rentmeester*, 883 F.3d at 1117. The plaintiff bears the burden of proving "copying of constituent elements of the work that are original." *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003), *quoting Feist*, 499 U.S. at 361.

"To determine whether two works are substantially similar, a two-part analysis – an extrinsic test and an intrinsic test – is applied." *Rice*, 330 F.3d at 1174. "For summary judgment, only the extrinsic test is important." *Id.*, *quoting Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) ("a plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment").

"The extrinsic test requires 'analytical dissection of a work and expert testimony.'" *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004), *quoting Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000). "'Analytical dissection' requires breaking the works 'down into their constituent elements, and comparing those elements for proof of copying as measured by 'substantial similarity.'" *Swirsky*, 376 F.3d at 845, *quoting Rice v. Fox Broad. Co.*, 148 F. Supp. 2d 1029, 1051 (C.D. Cal. 2001), *rev'd on other grounds*, *Rice,* 330 F.3d 1170. "It is the copyright plaintiff's burden to identify the elements for this comparison." *Rice*, 148 F. Supp. 2d at 1051. "[T]he extrinsic test requires that the plaintiff identify concrete elements based on objective criteria." *Three Boys Music,* 212 F.3d at 485.

"The showing of substantial similarity necessary to prove unlawful appropriation does not vary with the degree of access the plaintiff has shown." *Rentmeester*, 883 F.3d at 1124. As a result, "[t]he inverse ratio rule has no bearing on th[e] de-

termination" of whether the plaintiff has established "unlawful appropriation" under the extrinsic test. *Id.* at 1125.

"Because the requirement is one of substantial similarity to *protected* elements of the copyrighted work, it is essential to distinguish between the protected and unprotected material in a plaintiff's work." *Swirsky*, 376 F.3d at 845 (emphasis in original). "[A] a party claiming infringement may place 'no reliance upon any similarity in expression resulting from unprotectable elements.'" *Rice*, 330 F.3d at 1174, *quoting Apple Computer, Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1446 (9th Cir. 1994).

For example, "[i]n no case does copyright protection . . . extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in [a] work." 17 U.S.C. § 102(b); *Feist*, 499 U.S. at 344-45. And "[t]hat there can be no valid copyright in facts is universally understood." *Id.* at 344.

Also, "[i]t is axiomatic that copyright law denies protection to 'fragmentary words and phrases.'" *Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377, 1384 (Fed. Cir. 2007), *quoting CMM Cable Rep, Inc. v. Ocean Coast Props.,* 97 F.3d 1504, 1519 (1st Cir. 1996); *Narell v. Freeman*, 872 F.2d 907, 911 (9th Cir. 1989) ("Ordinary phrases are not entitled to copyright protection"). That exclusion applies both to short lyrical and musical phrases. *Jean v. Bug Music, Inc.*, No. 00 CIV 4022 (DC), 2002 WL 287786, at *5 (S.D.N.Y. Feb. 27, 2002) (copyright does not protect allegedly copied sequence of notes C, B-flat, C, with lyrics "clap your hands," because the sequence of notes "commonly appears in music" and lyric "is a common phrase"); *Allen v. Destiny's Child*, No. 06 C 6606, 2009 WL 2178676, at *12 (N.D. Ill. July 21, 2009) (three notes "unprotectable as a matter of law"); *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1253, 1256 (C.D. Cal. 2002) (six-second sequence of three notes C, D flat, C, with a background note C, "not subject to copyright protection as a matter of law"), *aff'd on other grounds,* 388 F.3d 1189 (9th Cir. 2004);

7

COPYRIGHT OFFICE & PROCEDURES, 37 C.F.R. §§ 202.1(a) ("words and short phrases" are not copyrightable) & 313.4(B) (three notes not copyrightable).

In addition, "expressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003); *Smith v. Jackson*, 84 F.3d 1213, 1216 n. 3 (9th Cir. 1996) (copyright does not protect musical elements that are "common or trite"). "In assessing originality, courts must be 'mindful of the limited number of notes and chords available to composers and the resulting fact that common themes frequently appear in various compositions, especially in popular music.'" *Newton*, 204 F. Supp. 2d at 1253, *quoting Gaste v. Kaiserman,* 863 F.2d 1061, 1068 (2d Cir. 1988) (similarities "between pieces of popular music must extend beyond themes that could have been derived from a common source or themes that are so trite as to be likely to reappear in many compositions"). Proof that a claimed similarity also appears in works predating a plaintiff's work – "prior art" – defeats a copyright claim because it establishes that "similarities that plaintiffs attribute to 'copying' could actually be explained by the commonplace presence of the same or similar [elements] within the relevant field." *Smith*, 84 F.3d at 1219.

These established principles lead inexorably to the conclusion that plaintiff fails to establish substantial similarity under the extrinsic test, between either 1996 *Lighter* or 2009 *Lighter*, on the one hand, and *Spark the Fire*, on the other hand.

**(b)** **Plaintiff Concedes that His 1996 *Lighter* and 2009 *Lighter* Are Not Substantially Similar to *Spark the Fire* in Melody, Harmony, Pitches and Other Elements Typical of Musical Compositions**

Plaintiffs claiming infringement of musical composition copyrights usually rely on alleged similarities in melody, namely the same or similar sequences of musical notes. 1 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT § 2.05[B] (2018) ("Melody is, of course, the usual source of protection for musical compositions"). Indeed, plaintiff alleged in his complaint that the melodies of 2009 *Lighter*'s chorus

and *Spark the Fire* are "almost identical . . . ."  FAC at 7, ¶ 32.  But that allegation falls by the wayside because plaintiff's own expert, Ms. Judith Finell, confirms there are in fact no similarities in melody between plaintiff's works and *Spark the Fire*. Fact Nos. 8-9.[5]

While similar sequences of pitches – that is, tones without regard to their respective durations – are not a substantial similarity,[6] Ms. Finell also admits there are no similarities in pitches, and therefore no similar pitch sequences, between plaintiff's compositions and *Spark the Fire*.  Fact Nos. 4-5.  In addition, she admits there are no similarities in harmony, overall structure, tempo, key or instrumentation (Fact Nos. 10-16), thereby refuting plaintiff's contrary allegations (FAC at 7, ¶ 32).

Plaintiff's expert has left plaintiff with nothing more than claimed similarities in lyrics that the Court already ruled are not substantially similar under the extrinsic test, and commonplace and unprotected rhythmic and other ideas plaintiff's expert admits are expressed differently.

**(c)**  **Plaintiff's Claimed Similarities A, B and C Fail to Raise a Genuine Issue as to the Alleged Infringement of His 1996 *Lighter* Copyright**

Plaintiff's expert, Ms. Finell, has identified five claimed "Similar Features," which she refers to as Similar Features A, B, C, D and E.  However, she concludes that only three of the claimed similarities – Similar Features A, B and C – appear in 1996 *Lighter* and *Spark the Fire*.  Fact No. 24.  Further, the claimed similarities are trivial, are used differently in the works and appear in prior art.

///

---

[5]  References to "Fact No." and "Facts Nos." are to the numbered uncontroverted facts in the proposed Statement of Uncontroverted Facts and Conclusions of Law submitted with defendants' Motion for Summary Judgment.

[6]  *Swirsky*, 376 F.3d at 848 n. 13 (a sequence of pitches "may break music down beyond recognition"); R. S. ROSEN, MUSIC & COPYRIGHT 153 n. 9 (2008) (similarity in pitch sequences, which are identical in *Rock of Ages* and *Rudolph, the Red-Nosed Reindeer*—C-D-C-A-F-D-C—"is of no musical significance").

**(1)** **"Similar Feature A": Lyrics and their Rhythm and Placement**

Ms. Finell's Similar Feature A is an alleged similarity in lyrics and their rhythm and placement. Specifically, she claims that 1996 *Lighter* and *Spark the Fire* both include lyrics that pronounce "Who's got," "lighter" and "fire" as, respectively, "Who got," "lightah" and "fi-ah," with "lightah" and "fi-ah" rhyming and ending a phrase, "fi-ah" pronounced as two syllables, and the presence of a long-short-long rhythm. Fact No. 26. She transcribes and identifies Similar Feature A as follows, with the allegedly similar words in bold, the allegedly similar rhythms labeled "similar rhythms" and the allegedly similar metric placement labeled "Beat 4":

**Finell's Musical Example 1a: "Lightah 1996" Verse 1, Bars 5-6**



**Finell's Musical Example 1b: "Lightah 1996" Chorus 1, Bars 13-14**



**Finell's Musical Example 1c: "Spark" Chorus 1, Bars 11-18**



10

Ms. Finell's own transcriptions establish that the allegedly similar lyrics are those the Court already ruled are not substantially similar under the extrinsic test because there is no substantial similarity of the ideas underlying the lyrics.  Fact Nos. 27, 31, 35; *Apple*, 35 F.3d at 1442 ("the extrinsic test now objectively considers whether there are substantial similarities in *both* ideas and expression" (emphasis in original)).  Further, Ms. Finell admits that the ideas of the compositions' lyrics are different.  Fact No. 33-34; *see, also Connor Bowen*, 2016 WL 4480165, at *13 (rejecting Ms. Finell's attempt to rely on claimed similarity in lyric "the court has already determined . . . is not copyrightable").

Further, pronouncing "Who's got" as "Who got," "lighter" as "lightah" and "fire" as "fi-ah," are each commonplace linguistic practices (Fact Nos. 38-40, 48-49), facts that Ms. Finell admits she lacks the expertise to refute (Fact No. 41, 50).  *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 839 (9th Cir. 2011) (expert's opinions "outside the areas of [his] expertise . . . properly excluded for lack of qualification").  These linguistic practices also appear in prior art.  Fact No. 42, 51; *Johnson v. Gordon*, 409 F.3d 12, 23 (1st Cir. 2005) ("Virtually by definition, expressions that are common are also unoriginal"); *see, above* at 8.  And Ms. Finell admits she did not research prior art.  Fact Nos. 18-19, 37, 47; *Samuels v. Holland Am. Line-USA Inc.*, 656 F.3d 948, 953 (9th Cir. 2011) (district court properly excluded expert testimony given "the absence of any support for her opinions"); *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability [and] that's not enough"); *Connor Bowen*, 2016 WL 4480165, at *12 (rejecting Ms. Finell's opinion where, as here, she "concedes that she did not conduct a review of any prior works").  Neither is there copyright protection in the fact that "lighter" and "fire," including when pronounced with "ah" endings, rhyme (Fact Nos. 44-45), or the fact that "fire" and "fi-ah" are pronounced as two syllables (Fact Nos. 60-66).  *Feist*, 499 U.S. at 344-45 (no protection in facts and ideas).

Also, ending lines of lyrics with words that rhyme, here "lightah" and "fi-ah," is an unprotected idea, process or procedure, also flows from the fact the words rhyme – because, by definition, the last words in a line or lyric are typically the ones that rhyme – and is not protected expression.  17 U.S.C. § 102(b); Fact No. 57; *Peters v. West*, 692 F.3d 629, 636 (7th Cir. 2012) (no protection in rhyming lyrics ending with "stronger" and "longer" with lyric ending "wronger"; "Copyright protects actual expression, not methods of expression"); OXFORD ENGLISH DICTIONARY (def. of "rhyme": "Correspondence of sound between words or the endings of words, <u>especially when these are used at the ends of lines of poetry</u>" (emphasis added)).

Further, Ms. Finell's identification of the allegedly similar metric placement under the brackets labelled "Beat 4" in her Musical Examples 1a and 1c, above at 10, shows that the metric placement – that is, where in a measure a note or lyric appears – of the line-ending rhyming words are different: "lightah" and "fi-ah" begin and are contained in beat 4 of 1996 *Lighter*, but begin in beat 3 of *Spark the Fire*. Fact Nos.  53-55; *Connor Bowen*, 2016 WL 4480165, at *12 (rejecting Ms. Finell's opinion where she ignored different metric placement of claimed similarities).

Finally, the allegedly similar rhythm that Ms. Finell identifies with the brackets labelled "similar rhythms" in her Musical Examples 1a and 1c, is a three-note rhythm of (1) an 8th note, (2) a 16th note and (3) a 16th note tied to the following note. Fact No. 67.[7]  But, 1996 *Lighter*'s three-note rhythm is different from *Spark the Fire*'s three-note rhythm because in each the second 16th note is tied to a different "following note": in 1996 *Lighter*, the second 16th note is <u>tied to a 16th note</u>, so that this third note endures for the duration of an 8th note, but in *Spark the Fire*, the second 16th note is <u>tied to an 8th note</u>, so that this third note endures for the duration of a 16th note and an 8th note combined.  Fact Nos. 68-70, 75.  The three-note rhythm is

---

[7]      "Note" and "notes" do not refer to musical notes such as A, B or C.  Rather, Ms. Finell admits there are no such similarities in the works and, instead, she uses "note" and "notes" to refer to unpitched rhythms.  Fact Nos. 6-7.

not only different, but it is as simple and basic as can be: as Ms. Finell put it, a rhythm of "long, short, long." Fact No. 71.

Further, Ms. Finell admits that this three-note rhythm was in common use prior to 1996 *Lighter*. Fact No. 79. She also admits that this short rhythm is not associated with any pitches in 1996 *Lighter* and *Spark the Fire*. Fact No. 72. In addition, she admits that this short unpitched rhythm is associated with different lyrics in 1996 *Lighter* ("Who's the thief") than the lyrics in *Spark the Fire* ("got the light," "spark the fire"); appears in different parts of 1996 *Lighter* (its verse) and in *Spark the Fire* (its chorus; and is a fragment with different metric placement extracted from longer, different rhythms in 1996 *Lighter* and *Spark the Fire*. *Compare* portion of Finell Musical Example 1a labeled "similar rhythms" and "Beat 4" (*see, above* at 10:12-14) *with* portion of Finell Musical Example 1c labeled "similar rhythms" and "Beat 4" (*see, above* at 10:24-27); Fact Nos. 73-74, 76-77. Also, short rhythms of three notes are not protected by copyright. *See, above* at 7-8; *see, also Northern Music Corp. v. King Record Distrib. Co.*, 105 F. Supp. 393, 400 (S.D.N.Y. 1952) ("originality of rhythm is a rarity, if not an impossibility").

In claiming similarity under the extrinsic test, plaintiff "may place 'no reliance upon any similarity in expression resulting from unprotectable elements.'" *Rice*, 330 F.3d at 1174, *quoting Apple,* 35 F.3d at 1446. Yet plaintiff relies on unprotected commonplace words pronounced in a commonplace way and a commonplace rhythm, all predating 1996 *Lighter*. His so-called "Similar Feature A" is not a substantial similarity in protected expression between 1996 *Lighter* and *Spark the Fire*.

### (2)   "Similar Feature B": a Short Rhythm Divorced of Melodic or Other Similarity and Used Differently in the Compositions

Plaintiff claims as Similar Feature B that 1996 *Lighter* and *Spark the Fire* both include the rhythm of 8th note, 8th note, 16th note, 16th note tied to a following note, 8th note. Fact Nos. 80-81. But as with Similar Feature A, his expert's "deposition testimony made it transparently clear that [her] initial characterization of this

13

phenomenon as a similarity was, at best, an exaggeration." *Johnson*, 409 F.3d at 24.

Ms. Finell admits there are no pitches associated with these short segments of rhythm and, instead, they are bare rhythms devoid of tone. Fact No. 84. She also admits that 1996 *Lighter*'s five-note rhythm is different from *Spark the Fire*'s five-note rhythm because, once again, the "following note" is different: 1996 *Lighter*'s tied note is tied to a 16th note while *Spark the Fire*'s tied note is tied to an 8th note. Fact Nos. 82-83. In addition, she admits that the rhythm appears in different parts of the two compositions (in the interlude and verses of 1996 *Lighter* but in the chorus of *Spark the Fire*); is associated with different lyrics in 1996 *Lighter* ("Where do they go – I'd") and *Spark the Fire* ("Who got the lightah" and "let's spark the fi-ah"); has a different metric placement in the two compositions; and is part of a longer and different rhythmic phrase in 1996 *Lighter*. Fact Nos. 85-88. In short, Similar Feature B is not only a short, bare unpitched rhythm that is not protected by copyright (*see, above* at 7-8), but also is divorced of melodic or other similarity and used very differently in 1996 *Lighter* and *Spark the Fire*.

Moreover, Ms. Finell admits that she did no research to determine whether this rhythm was in common use prior to 1996 *Lighter*. Fact No. 90. *Daubert*, 43 F.3d at 1319 (expert's testimony unsupported by research properly excluded). While she turned a blind eye to prior art, defendants showed that this same rhythm appears in numerous musical works predating plaintiff's 1996 *Lighter*. Fact No. 91; *Smith*, 84 F.3d at 1216 n. 3 ("common or trite" musical elements not protected)

Plaintiff's Similar Feature B is a short, unpitched, unprotected and commonplace snippet of rhythm predating 1996 *Lighter* and that is different in *Spark the Fire*, and is not a substantial similarity under the extrinsic test.

**(3)    "Similar Feature C": the Presence of Tritones, *i.e.*, the Idea of Separating Two Successive Pitches by Three Whole Tones**

Plaintiff claims as Similar Feature C the presence of tritones, which are instances where two successive pitches are separated by three whole tones or steps.

14

For example, going from a C pitch to an F-sharp pitch is a tritone because a C and an F-sharp are separated by three whole tones or steps, namely the whole steps from C to D, D to E, and E to F-sharp.  Likewise, going from A to D-sharp, from B to E-sharp and from D to G-sharp are each tritones.  Fact Nos. 92-94.

Ms. Finell relies on the presence of tritones in the guitars and bass in 1996 *Lighter* and a chime in *Spark the Fire*.  Fact No. 95.  She admits that the pitches that mark the beginning and end of the tritones in 1996 *Lighter* are different from the pitches that mark the beginning and end of the tritones in *Spark the Fire*, and she admits that those pitches have different durations in 1996 *Lighter* and *Spark the Fire*.  Fact No. 97, 101.  They are, in short, different <u>notes</u>, and the only similarity is that they are each three whole tones apart.  Ms. Finell also admits that the tritones in 1996 *Lighter* appear in different melodies than the tritones in *Spark the Fire*.  Fact Nos. 102.  In addition, she admits that the rhythms in which the tritones appear are different, with the rhythm in 1996 *Lighter* consisting of quarter notes, 8th notes, dotted 8th notes and rests, while the rhythm in *Spark the Fire* consists solely of repeated quarter notes, without any 8th or dotted 8th notes or rests.  Fact Nos. 98-100.

Because the instruments playing the tritones, the pitches that make up the tritones, the duration of those pitches and the associated melodies are different in 1996 *Lighter* and *Spark the Fire*, the only tritone similarity between those compositions is <u>the idea</u> of separating two pitches by three whole tones or steps.  Ideas, however, are not protected expression.  17 U.S.C. § 102(b); 17 U.S.C. § 102(b); *Feist*, 499 U.S. at 344-45; *see, also Connor Bowen*, 2016 WL 4480165, at *14 ("Finell identifies the use of some similar techniques and musical devices, but she does not show that the two Works employ these techniques and devices in the same manner").

Further, Ms. Finell also admits that tritones have appeared in many musical works before 1996 *Lighter*.  *See, above* at Fact No. 106; *Smith*, 84 F.3d at 1216 n. 3.

Plaintiff's claimed Similar Feature C is nothing more than the preexisting idea of separating pitches by three tones or steps, and that is not a substantial similarity in

15

protected expression between 1996 *Lighter* and *Spark the Fire*.

### (4)  "Similar Features" A, B and C Are Not an Original Selection and Arrangement of "Numerous" Elements

Neither does plaintiff's claimed similarity in commonplace lyrics, a commonplace five-note rhythm divorced from pitches or other musical elements and the idea of tritones rise to a protectable selection and arrangement.

While "a *combination* of unprotectable elements may qualify for copyright protection . . . it is not true that *any* combination of unprotectable elements automatically qualifies for copyright protection. . . . [A] combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava*, 323 F.3d at 811 (emphasis in original).  Here, plaintiff's claimed Similar Features A (unprotected lyrics that rhyme, with a long, short, long rhythm), B (unprotected five-note rhythm) and C (the idea of separating two pitches by three steps or tones), do not constitute a copyrightable selection and arrangement.

A combination of elements achieves copyright by selection and arrangement into an original pattern.  *Rice*, 330 F.3d at 1179 (rejecting the plaintiff's selection-and-arrangement argument because the works did not have the "same pattern of generic similarities"); *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002) ("The particular sequence in which an author strings a significant number of unprotectable elements can itself be a protectable element.  Each note in a scale, for example, is not protectable, but a pattern of notes in a tune may earn copyright protection.").  Plaintiff's expert, however, admits there is no similar "pattern of notes" here.  Instead, her Similar Features A, B and C are plucked from different places and contexts in 1996 *Lighter* and *Spark the Fire*, rather than being selected and arranged substantially similarly in both works.  Fact Nos. 56, 74, 85-89, 96; *Batts v. Adams*, No. CV 10-8123-JFW (RZX), 2011 WL 13217923, at *5 & 5 n. 7 (C.D. Cal. Feb. 8,

16

2011) (mere presence in musical compositions of 4/4 meter, similar tempo, some commonplace structural elements, drums combined with electronic instruments and sounds, drums with clapping and repetition of word "boom" set to rhythm with syncopation, not "original enough in their selection and arrangement to qualify for copyright protection"); *Flynn v. Surnow*, No. CV 02-9058-JFW PLAx, 2003 WL 23411877, at *9 (C.D. Cal. Dec. 9, 2003) (claimed similarities "are randomly scattered throughout the works and have no concrete pattern or sequence in common"); *see, also Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984) (motion picture; rejecting "random similarities scattered throughout the works").

In addition, plaintiff's claim of three similarities falls far short of the "numerous" elements required to achieve a protected selection and arrangement. *Satava*, 323 F.3d at 811 (combination of six elements not "numerous enough"); *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1147 (9th Cir. 2003) (combination of four elements not sufficient); *Batts*, 2011 WL 13217923, at *5 n. 7 (C.D. Cal. Feb. 8, 2011) (seven claimed similarities not "numerous enough"); *cf. Metcalf*, 294 F.3d at 1074 (triable issue where works' selection and arrangement consisted of a great many "striking" similarities).[8]

---

[8] "In *Metcalf,* unlike this case, the 'generic similarities' were voluminous, nearly identical, and occurred in the same pattern." *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 843–44 (C.D. Cal. 2010), *aff'd sub nom. Gable v. Nat'l Broad. Co.*, 438 F. App'x 587 (9th Cir. 2011); *Metcalf*, 294 F.3d at 1073-74 ("The similarities between the relevant works are striking: Both the Metcalf and Bochco works are set in overburdened county hospitals in inner-city Los Angeles with mostly black staffs. Both deal with issues of poverty, race relations and urban blight. The works' main characters are both young, good-looking, muscular black surgeons who grew up in the neighborhood where the hospital is located. Both surgeons struggle to choose between the financial benefits of private practice and the emotional rewards of working in the inner city. Both are romantically involved with young professional women when they arrive at the hospital, but develop strong attractions to hospital administrators. Both new relationships flourish and culminate in a kiss, but are later strained when the administrator observes a display of physical intimacy between the main character and his original love interest. Both administrators are in their thir-

17

Accordingly, the claimed Similar Features A, B and C do not constitute a protected selection and arrangement.

**(5)    The Differences Between 1996 *Lighter* and *Spark the Fire* Far Outweigh the Three Trivial Claimed Similarities**

The extrinsic test is not satisfied if the claimed similarities between two works are minor and outweighed by the differences. *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1078 (9th Cir. 2006) ("an actual reading of the two works reveals greater, more significant differences and few real similarities").

Here, 1996 *Lighter* and *Spark the Fire* are different in melody, harmony and pitch, as well as key, tempo, overall structure and instrumentation. Fact Nos. 5, 9, 11, 13-16. The words that appear in both 1996 *Lighter* and *Spark the Fire* – namely, "Who's got," "lightah" and "fi-ah" – appear in lyrics that are very different (Fact No. 29) and with different underlying ideas (Fact Nos. 33-35). Even the three-note and five-note rhythms in 1996 *Lighter* and *Spark the Fire* are different, appear in different places, are in the context of different rhythms and metric placement and are associated with different lyrics. Fact Nos. 69-71, 73-77, 81-83, 85-89. Also, the idea of separating two pitches by three tones – *i.e.*, a tritone – is expressed with different pitches with different durations beginning and ending that separation, and appears in different melodies. Fact Nos. 97-102. There are great and significant differences and no real similarities between 1996 *Lighter* and *Spark the Fire*.[9]

ties, were once married but are now single, without children and devoted to their careers and to the hospital. In both works, the hospital's bid for reaccreditation is vehemently opposed by a Hispanic politician.").

[9] While this Circuit's current law indicates the Court cannot consider intrinsic similarity on summary judgment, no jury could conclude that "the ordinary, reasonable person would find the total concept and feel of [plaintiff's heavy metal rants and *Spark the Fire*] to be substantially similar." *Three Boys Music*, 212 F.3d at 485, *quoting Pasillas v. McDonald's Corp.,* 927 F.2d 440, 442 (9th Cir.1991); *compare* Audio Exhibits 24 & 25 *with* Audio Exhibit 23. This case is a poster child for allowing the district court, at least in extreme cases such as this where the plaintiff's expert concedes the absence of any similarity in melody, harmony and pitches, to – as

Different in every way that counts, 1996 *Lighter* and *Spark the Fire* share, with very important differences, only unprotected commonplace words, snippets of bare rhythm and ideas. Plaintiff's expert not only concedes that her claimed similarities appear in prior art, but also concedes the examples of prior art cited by defendants' expert (Fact No. 20, 23), which include numerous songs with the same claimed similarities (Fact Nos. 166-91). Accordingly, there is no genuine dispute that plaintiff has failed to establish substantial similarity between his 1996 *Lighter* and *Spark the Fire* under the extrinsic test.

**(d)**  **Plaintiff's Claimed Similarities A, D and E Fail to Raise a Genuine Issue as to the Alleged Infringement of His 2009 *Lighter* Copyright**

Of the five claimed "Similar Features" that Ms. Finell identifies, she claims that only A, D and E appear in 2009 *Lighter* and *Spark the Fire*. Fact No. 107.

**(1)**  **"Similar Feature A": the Same Similarity that Plaintiff's Expert Finds in 1996 *Lighter***

Plaintiff's expert, Ms. Finell, claims that Similar Feature A from 1996 *Lighter* also appears in 2009 *Lighter* and is a similarity between 2009 *Lighter* and *Spark the Fire*. Fact No. 108.

Even if Similar Feature A were protected expression, it would not be protected by plaintiff's claimed copyright in 2009 *Lighter*. That is so because plaintiff's 2009 *Lighter* "is a derivative work of [1996 *Lighter*]." FAC at 4, ¶ 14; 17 U.S.C. § 101 ("A derivative work is a work based upon one or more preexisting works"). "The copyright in a . . . derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, . . . ." 17 U.S.C. § 103(b); *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853

in other circuits – reach what we call the intrinsic test. *Johnson*, 409 F.3d at 22 n. 6 (summary judgment affirmed where undisputed that compositions "do not sound alike and would not sound alike to an ordinary listener"); *see, also, Matsushita*, 475 U.S. at 587 ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial").

19

F.3d 980, 990 (9th Cir. 2017) ("The copyright protections for a derivative work are limited to the changes and contributions made").  Because Ms. Finell's Similar Feature A appears in 1996 *Lighter*, Similar Feature A is "preexisting material" that is not protected by any copyright in 2009 *Lighter*.  17 U.S.C. § 103(b); Feb. 13, 2018 Order at 9.  As a result, the claimed presence of Similar Feature A in 2009 *Lighter* and *Spark the Fire* cannot support a claim for the alleged infringement of the copyright in 2009 *Lighter*.  *Russell v. Price*, 612 F.2d 1123, 1128 (9th Cir. 1979) ("a derivative copyright protects only the new material contained in the derivative work, not the matter derived from the underlying work").  Simply put, Similar Feature A is irrelevant to the extrinsic test as to 2009 *Lighter* and *Spark the Fire*.

Further, Similar Feature A plainly is not protected expression:  it is comprised of unprotected commonplace words pronounced in a commonplace way, and a commonplace rhythm, all predating 1996 *Lighter*.  *See, above* at 7-8.  That is true even as to Similar Feature A as it appears in 2009 *Lighter*.  Fact Nos. 110, 116-43.

Accordingly, Similar Feature A is not a substantial similarity in protected expression between 2009 *Lighter* and *Spark the Fire*.

**(2)    "Similar Feature D": the Use of Triplets, *i.e.,* the Idea of Three Notes in the Time Normally Allotted to Two Notes**

Plaintiff claims as Similar Feature D that 2009 *Lighter* and *Spark the Fire* both have triplets, which is a rhythm of three notes of equal value in the time normally allotted for two notes of the same value.  For example, three 8th notes in the space of two 8th notes, as well as three 16th notes in the space of two 16th notes, are triplets.  Fact Nos. 144-45.

However, plaintiff's expert admits that the triplets in 2009 *Lighter* and *Spark the Fire* are bare rhythm without pitches or tones.  Fact No. 146.  She also admits that the triplets appear in different places in 2009 *Lighter* and *Spark the Fire*: the triplets are in 2009 *Lighter*'s chorus but in *Spark the Fire*'s verse.  Fact No. 147.  In addition she admits that the triplets are associated with very different lyrics in 2009

20

*Lighter* ("Who got my") and *Spark the Fire* ("O M G O M G I'm back a-" and "-riginal feel good is what I de-"). Fact No. 148. She further admits that the triplets in 1996 *Lighter* are separated by two 8th notes, but the triplets in *Spark the Fire* are not, so that the triplets appear in different rhythmic phrases. Fact Nos. 149-151.

As a result, the only triplet similarity between 2009 *Lighter* and *Spark the Fire* is the idea, expressed very differently, of a rhythm of three notes in the time normally allotted for two notes. Since ideas are not protected expression, Similar Feature D cannot be a substantial similarity in protected expression under the extrinsic test. *Rice*, 330 F.3d at 1174 (a plaintiff "may place 'no reliance upon any similarity in expression resulting from unprotectable elements'"), *quoting Apple,* 35 F.3d at 1446.

Furthermore, plaintiff's expert admits that triplets have been used in western music for at least a hundred years. Fact No. 153. As a result, plaintiff's claimed Similar Feature D also fails as a substantial similarity in protected expression because "[v]irtually by definition, expressions that are common are also unoriginal. *Johnson*, 409 F.3d at 23; *Smith*, 84 F.3d at 1216 n. 3 (no protection for "common or trite" musical elements).

Plaintiff has failed to establish that Similar Feature D is a substantial similarity in protected expression between 2009 *Lighter* and *Spark the Fire*.

### (3)    "Similar Feature E": the Idea of Combining Pairs of Similar Short Lyrics with the Same Rhythm

Finally, plaintiff claims as Similar Feature E that the choruses or "hooks" of 2009 *Lighter* and *Spark the Fire* pair short lyrics set to the same rhythm. Once again, plaintiff's expert concedes there is no similarity in the pitches, tones or melodies of these portions of 2009 *Lighter* and *Spark the Fire*. Fact Nos. 157. Rather, Ms. Finell cuts the hook of each composition in half, labels the halves as "hook 1" and "hook 2" and finds similarity in that each is a short phrase with supposedly similar lyrics and "the same rhythm." Fact No. 154.

///

21

But by "the same rhythm," Ms. Finell does not mean that the rhythm of hook 1 and 2 of 2009 *Lighter* is the same as the rhythm of hook 1 and 2 of *Spark the Fire*. To the contrary, she admits their rhythms are very different. In 2009 *Lighter*, the rhythm of hook 1 is a triplet of 8th notes followed by two 8th notes, and that triplet/two-8th note rhythm is repeated in 2009 *Lighter*'s hook 2. Fact No. 158. In stark contrast, *Spark the Fire*'s hook 1 has no triplet and, instead, its rhythm is an 8th note, followed by an 8th note, followed by a 16th note, followed by a 16th note tied to an 8th note, followed by an 8th note, and that very different rhythm is repeated in *Spark the Fire*'s hook 2. Fact Nos. 159. As a result, the only rhythmic similarity that Ms. Finell identifies between the choruses of 2009 *Lighter* and *Spark the Fire* is the unprotected idea of repeating a rhythm.

The balance of Ms. Finell's claimed Similar Feature E is the pairing of two short phrases she claims are similar, namely that 2009 *Lighter*'s hooks 1 and 2 combine the lyrics "Who got my lightah" with "Who got my fi-ah," while *Spark the Fire*'s hooks 1 and 2 combine the lyrics "Who got the lightah" with "Let's spark the fi-ah." Fact Nos. 155. But Ms. Finell's Similar Feature E relies on the same claimed lyric similarities she relies on for her Similar Feature A (Fact No. 156), which are not a substantial similarity (*see, above* at 10-11, 20). She also did no research as to prior art  (Fact No. 164) and admits that compositions before plaintiff's works paired short phrases with the same rhythm for both short phrases. Fact No. 165.

Similar Feature E is not a substantial similarity in protected expression between 2009 *Lighter* and *Spark the Fire*.

**(4)    "Similar Features" A, D and E Also Are Not an Original Selection and Arrangement of "Numerous" Elements**

The alleged presence in 2009 *Lighter* of Similar Features A (unprotected lyrics that rhyme, with a long, short, long rhythm), D (the idea of sounding three notes in the time normally allotted to two) and E (the idea of pairing short lyrics with the same rhythm) does not establish a protected selection and arrangement allegedly

22

copied by *Spark the Fire*.

Similar Feature A is irrelevant to the extrinsic analysis of 2009 *Lighter* because plaintiff's claimed derivative copyright in 2009 *Lighter* does not extend to the "preexisting" Similar Feature A.  17 U.S.C. § 103(b); *see, above* at 19-20.  That leaves plaintiff with Similar Features D and E.  But they appear in different places: Similar Features D and E both appear in 2009 *Lighter*'s chorus, but Similar Feature D appears in *Spark the Fire*'s verse.  Fact No. 147.  As a result, Similar Features D and E are not selected and arranged in the same way in 2009 *Lighter* and *Spark the Fire*.  *Rice*, 330 F.3d at 1179 (selection-and-arrangement argument fails because works did not have the "same pattern of generic similarities"); *see, above* at 16-17.  In addition, the alleged presence of two unprotected ideas – Similar Features D and E – is far short of the numerous elements required to create an original selection and arrangement.  *See, above* at 17.

Even if Similar Feature A also were considered in the extrinsic analysis of 2009 *Lighter* and *Spark the Fire*, the alleged presence of Similar Features A, D and E do not constitute an original selection and arrangement.  Rather than being a cohesive and concrete patterned selection and arrangement, these claimed similarities are plucked from different parts of the compositions, and three claimed similarities are not the "numerous" elements required for an original selection and arrangement.  *See, above* at 16-17.

Similar Features A, D and E do not constitute a protected selection and arrangement that is substantially similar in *Spark the Fire*.

### (5)   The Differences Between 2009 *Lighter* and *Spark the Fire* Also Far Outweigh the Claimed Similarities

2009 *Lighter* and *Spark the Fire* are different in melody, harmony and pitch, as well as key, tempo, overall structure and instrumentation.   Fact Nos. 5, 9, 11, 13-16.  Also, the words that appear in both 2009 *Lighter* and *Spark the Fire* – "Who got," "lightah" and "fi-ah" – appear in lyrics that are very different with very differ-

23

ent underlying ideas (Fact Nos. 110, 116-18), and the three-note rhythm that appears in 2009 *Lighter* and *Spark the Fire* appears in a different place with different rhythms and metric placement and is associated with different lyrics, pitches and melodies in 2009 *Lighter* and *Spark the Fire* (Fact Nos. 138-43. In addition, the idea of sounding three notes in the time normally allotted for two notes – that is, Similar Feature D's triplet – appears in different places, is associated with different lyrics and is expressed with different rhythms in 2009 *Lighter* and *Spark the Fire*. Fact Nos. 147-51. And the paired short phrases on which plaintiff relies for Similar Feature E include different lyrics, have a different underlying idea and are set to different rhythms and metric placement. Fact Nos. 155, 158-62. There are great and significant differences and no real similarities between 20090 *Lighter* and *Spark the Fire*. *Funky Films*, 462 F.3d at 1078.

2009 *Lighter* and *Spark the Fire* also are very different in every way that counts, with the only claimed similarities in unprotected commonplace words, a three-note snippet of rhythm and ideas, all with very important differences. And Ms. Finell concedes that the claimed similarities appear in prior art and concedes the numerous examples of prior art cited by defendant's expert, Dr. Ferrara. Fact No. 20, 23, 166-91. Accordingly, there also is no genuine dispute that plaintiff has failed to establish substantial similarity between his 2009 *Lighter* and *Spark the Fire* under the extrinsic test.

### (e) Plaintiff's Claims for Contributory and Vicarious Copyright Infringement Fall with His Claim for Direct Infringement

Plaintiff's first claim for direct copyright infringement fails because "a plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment." *Kouf*, 16 F.3d at 1045. And plaintiff's second and third claims for, respectively, contributory and vicarious copyright infringement also fail because those claims are "secondary liability" theories that require, *inter alia,* an underlying "direct infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 929–31

24

(2005); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n. 2 (9th Cir. 2001) ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party").

3.   **CONCLUSION**

Plaintiff's 1996 *Lighter* and 2009 *Lighter* are dramatically different from *Spark the Fire*; his own expert refutes his complaint's allegations of similarities in melody and other typical elements of musical composition infringement claims; and, with what is left, he has failed to identify any substantial similarities in protected expression. Instead, plaintiff's expert relies on words the Court already has ruled are not substantially similar under the extrinsic test; snippets of rhythm pulled from different rhythmic phrases; and musical ideas such as tritones and triplets expressed in very different ways, including very different associated rhythms and lyrics. Plaintiff's expert also admits her claimed similarities are found in prior art, which she concedes she failed to consider. Her "deposition testimony made it transparently clear that [her claim of substantial similarities] was, at best, an exaggeration." *Johnson*, 409 F.3d at 24.

Disregarding the "unprotectable material because a party claiming infringement may place 'no reliance upon any similarity in expression resulting from unprotectable elements'" (*Rice*, 330 F.3d at 1174, *quoting Apple*, 35 F.3d at 1446), compels the conclusion that there is no genuine dispute that plaintiff fails to satisfy the extrinsic test and defendants' Motion for Summary Judgment should be granted.

Dated: July 20, 2018

/s/ Peter J. Anderson
Peter J. Anderson, Esq.
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
Attorney for Defendants
GWEN STEFANI,
PHARRELL WILLIAMS,
BREAK OUT MY COCOON, LLC
and UMG RECORDINGS, INC.