UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RICHARD MORRILL,

                Plaintiff,

v.

GWEN STEFANI, et al.,

                Defendants.

Case No.: CV 17-7301-DMG (SKx)

**ORDER RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [112]**

This copyright infringement action is before the Court on Defendants Gwen Steffani, Pharrell Williams, Break Out My Cocoon, LLC, and Interscope Records' motion for summary judgment ("MSJ") [Doc. # 112].  The Court held a hearing on the MSJ on September 28, 2018.  Having duly considered the parties' written submissions, the Court **GRANTS** Defendants' MSJ.[1]

---

[1] Defendants filed an evidentiary objection to some of Morrill's evidence.  Evidentiary Objections [Doc. # 114-5.]  The Court rules on the evidentiary objections insofar as the evidence is relevant to the MSJ disposition.  To the extent the Court does not rely on evidence to which an evidentiary objection was interposed, the objection is **OVERRULED** as moot.

# I.

# PROCEDURAL BACKGROUND

In November 2017, Morrill filed his First Amended Complaint—the operative pleading here. [Doc. # 77]. In that pleading, Morrill alleged four claims for: (1) direct copyright infringement; (2) contributory copyright infringement; (3) vicarious copyright infringement against Williams and Interscope Records only; and (4) a conversion claim under California state law against Steffani only. *Id.* Morrill also sought declaratory relief and attorneys' fees, *id.*, although he soon stipulated to dismissing his request for declaratory relief. [Docs. ## 78-79].

On November 22, 2017, Defendants collectively moved to dismiss this action in its entirety through two separate motions. [Docs. ## 81-82]. Soon after, the Court dismissed with prejudice Morrill's conversion claim against Steffani and his request for attorneys' fees. Order Motion to Dismiss ("MTD Order") at 5, 13 [Doc. # 95]. The Court also dismissed Morrill's claim for copyright infringement of the Protected Songs' lyrics with prejudice and his infringement claim as to the Protected Songs' sound recordings without prejudice. *Id.* at 13. The Court denied, however, Defendants' motion to dismiss Morrill's claim of infringement of the Protected Song's musical compositions. *Id.* at 11-12. Morrill did not amend his infringement claim as to the Protected Songs' sound recordings.

On July 20, 2018, Defendants filed their MSJ, arguing that the rest of Morrill's infringement claim should be dismissed because the Protected Songs' and *Spark the Fire*'s musical compositions are not substantially similar. [Doc. # 112.] And because Morrill's direct infringement claim fails, Defendants contend that they are also entitled to summary judgment on his remaining claims. *Id.* The MSJ is now fully briefed. [Doc. ## 113, 114.]

## II.

## FACTUAL BACKGROUND

The Court sets forth the following undisputed material facts and views them in the light most favorable to Plaintiff Richard Morrill, the non-moving party.

Morrill owns the copyright for two songs at issue here: (1) a 1996 song titled *Who's Got My Lightah* ("1996 *Lightah*") and (2) a 2009 song titled *Who's Got My Lighter* ("2009 *Lighter*") (collectively "Protected Songs"). Plaintiff's Statement of Undisputed Facts ("SUF") ¶¶ 1-2 [Doc. # 113-10]. 2009 *Lighter* is a derivative version of 1996 *Lightah*. First Amended Complaint ("FAC") ¶ 14 [Doc. # 77]. Morrill alleges that in 2014, Stefani and Williams copied the chorus from 2009 *Lighter* into *Spark the Fire*, the allegedly infringing song. FAC ¶ 28. According to Morrill, the lyrics, chorus, rhythm, melody, background music, and accompanying sounds in *Spark the Fire* and the Protected Songs are very similar. *Id.* ¶¶ 29-32. Morrill claims that he learned that *Spark the Fire* infringes on the copyrights he owns when he heard Stefani perform *Spark the Fire* on *The Voice*, a television singing competition. *Id.* ¶¶ 38, 40.

Morrill's copyright infringement claim against Defendants is based on alleged similarities between the Protected Songs' and *Spark the Fire*'s musical compositions. The parties' comparison between the Protected Songs and *Spark the Fire* are supported by reports from Judith Finell on behalf of Morrill [Doc. ## 112-8 ("Finell Report"); 112-16][2], and reports from Marcyliena Morgan and Lawrence Ferrara on behalf of Defendants. [Doc. ## 112-4–112-7; 114-1].

---

[2] Defendants object to the introduction of the Finell Report and Finell Deposition as expert evidence. Evidentiary Objection ¶ 10-11 [Doc. # 114-5]. According to Defendants, Finell's Report and Deposition must be excluded under Federal Rule of Evidence 702 because her methodology is unreliable. *Id.* (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). In this case, methodology goes to the weight of the expert's testimony, not whether the evidence is admissible. *See Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998). Thus, the Court **OVERRULES** Defendants' objection to Finell's evidence.

A. **Alleged Similarities between 1996 *Lightah* and *Spark the Fire***

Morrill, through Finell, identifies three main features between 1996 *Lightah* and *Spark the Fire*: Features A, B, and C.[3]

According to Morrill, **Feature A** involves the "recurring lyrics combined with structural and rhythmic similarities, including the hooks of both songs." Statement of Additional Facts ("SAF") ¶ 221 [Doc. # 113-10].[4]  Finell observes that the two pieces share similar words, pronunciation, rhyming, vernacular deviation, shared metric placement, phrase structure, rhythm, and function. *Id.* ¶ 222. Specifically, Finell observes that 1996 *Lightah* and *Spark the Fire* both include lyrics that pronounce "Who's got" as "Who got," "lighter" as "light-ah," and "fire" as "fi-ah." SUF ¶ 26.[5]

As for **Feature B**, Morrill contends that both pieces have "a nearly identical rhythmic pattern[.]" SAF ¶ 224. The similar rhythmic pattern occurs in the *recurring vocal phrase* in 1996 *Lightah*, whereas it occurs in the *hook phrases* in *Spark the Fire*. *Id.* That similar rhythm in 1996 *Lightah* is an eighth note-eighth note-sixteenth note-sixteenth note tied to *a sixteenth note*-eighth note. Finell Report at 8. The similar rhythm in *Spark the Fire* is an eighth note-eighth note-sixteenth note-sixteenth note tied to an *eighth note*-eighth note. *Id.* Moreover, the two pieces share a similar rhythmic value for each note, similar rhythmic emphasis on strong and weak beats, and syncopation. SAF ¶ 224.

In **Feature C**, 1996 *Lightah* and *Spark the Fire* share a distinctive tritone—an interval spanning six adjacent pitches—that are featured in the instrumental accompaniments in both songs. SUF ¶¶ 92-95. An example of a tritone is a pitch going from C to an F-sharp because the two notes are separated by three whole tones (C to D, D to E, and E to F-sharp). *Id.* ¶ 94. In 1996 *Lightah*, this tritone is found in various

---

[3] Features A, B, and C are composed of thirteen shared elements. Opp'n at 10-11.

[4] A "hook" is the term used in music to describe the melodic signature of the work and is the part of a song that is typically recognized. SAF ¶ 232.

[5] Figure 1 at the end of this Order is a score highlighting Feature A.

instrumental melodies. *Id.* ¶ 95. In *Spark the Fire*, tritones are used throughout the song, *id.* ¶ 96, which Morrill argues is particularly distinctive because the instrumental section is sparse. SAF ¶ 240. But the tritones in each song start and end on different notes, and create different rhythms. SUF ¶¶ 97, 99-100.

Not only does he contend that Features A, B, and C are individually distinctive, Morrill argues that Features A and C, and Features B and C are protectable when combined. Opp'n at 18. Finell notes that Features A and C are protectable when combined because these features occur simultaneously in the first two verses and the chorus sections in 1996 *Lightah*, and the two features always occur simultaneously in the chorus of *Spark the Fire*. SAF ¶ 223. Likewise, Finell observes that Features B and C occur simultaneously in verses 2 and 3 of 1996 *Lightah* and in the chorus of *Spark the Fire*. *Id.* ¶ 227.

**B.  Similarities between 2009 *Lighter* and *Spark the Fire***

Along with Feature A, Morrill argues that 2009 *Lighter* and *Spark the Fire* also share Features D and E.[6]

***Feature D*** is that both songs have a "distinctive triplet rhythm."[7] *Id.* ¶ 230. Finell notes that Feature D is the hook in 2009 *Lighter* and the "backbone and driving force" of *Spark the Fire*. *Id.* But in 2009 *Lighter*, the triplet is separated by two eighth notes. SUF ¶ 149. In contrast, the triplet rhythms in *Spark the Fire* do not have an eighth note separating them. *Id.* ¶ 150. The triplets in the two songs, moreover, appear in different rhythmic phrases. *Id.* ¶ 151.

***Feature E*** involves the structural similarity between the paired hook structures of the songs. SAF ¶ 231. Finell notes that there are nearly identical phrases of hook 1 in each song. Hook 1 is followed by Hook 2 in *Spark the Fire* and most of the time in 2009 *Lighter*, and Hook 2 contains phrases rhyming with Hook 1 in identical rhythms in both songs. *Id.* ¶ 246. That is, both have similar phrases: (1) Hook 1 is "who got my light-

---

[6] Features A, D, and E are composed of twelve shared elements. Opp'n at 19.

[7] A triplet is a rhythm in which three notes are in the time normally allotted for two notes. SUF ¶ 51.

1  ah" in 2009 *Lighter* and "who got the light-ah" in *Spark the Fire*; and (2) and Hook 2 is
2  "who got my fi-ah" in 2009 *Lighter* and "let's spark the fire" in the similarly named song.
3  *Id.*  Finell adds that Features A and E are protectable when combined.  Opposition
4  ("Opp'n") at 22 [Doc. # 113].

## III.
## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule 56 requires the parties to set out facts they will be able to prove at trial.").  "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  "Rather, it draws all inferences in the light most favorable to the nonmoving party."  *Id.*

# IV.
# DISCUSSION

To show copyright infringement, a plaintiff must prove: (1) ownership of a valid copyright and (2) that the defendant infringed by copying protected elements of her work. 17 U.S.C. § 501(a); *Three Boys Music Corp. v. Bolton*, 212 F.3d 447, 481 (9th Cir. 2000). Absent direct evidence of copying, a plaintiff can establish infringement by showing that: (1) the defendant had access to plaintiff's work and (2) the works are substantially similar. *L.A. Printex Indus., Inc. v. Aeropostale, Inc.* 676 F.3d 841, 846 (9th Cir. 2012).

The substantial similarity test consists of an extrinsic and intrinsic component. *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006). "At summary judgment, courts apply only the extrinsic test; the intrinsic test, which examines an ordinary person's subjective impressions of the similarities between two works, is exclusively the province of the jury." *Id.* A plaintiff who cannot satisfy the extrinsic test necessarily cannot prevail on a copyright claim as a matter of law. *Id.*

"The extrinsic test considers whether two works share a similarity of ideas and expression as measured by external, objective criteria." *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004). The extrinsic test "often requires analytical dissection of a work and expert testimony." *Three Boys Music Corp.*, 212 F.3d at 485. Analytical dissection involves "breaking the works down into their constituent elements, and comparing those elements for proof of copying as measured by substantial similarity." *Swirsky*, 376 F.3d at 845 (citations and quotation marks omitted). In conducting its analysis into whether works are substantially similar, it is crucial to distinguish between protected and unprotected elements. *Id.* Specially, scènes à faire—"stock or standard features that are commonly associated with the treatment of a given subject"—are unprotectable. *Id.*[8]

---

[8] Morrill contends that based on the "inverse ratio" rule, he need only show a lower degree of substantial similarity because he has shown a higher degree of access. Opp'n at 4. Not so—that rule assists only in proving copying. The Ninth Circuit recently explained that, with inverse ratio rule, when there is stronger evidence of access, less compelling similarities between the two works must be shown to give rise to an inference of copying and vice versa. *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1124 (9th Cir. 2018). Once copying is shown, Morrill must still demonstrate the copying of protected expression. "The showing of substantial similarity necessary to prove unlawful appropriation does not vary with the degree of access the plaintiff has shown." *Id.*

Defendants contend only that the Protected Songs and *Spark the Fire* are not substantially similar and that Morrill cannot satisfy the extrinsic test for either of his songs. MSJ at 5-8. If Morrill falls short on the extrinsic test, then *Spark the Fire* is not substantially similar to the Protected Songs, and does not violate his copyrights as a matter of law. *Funky Films*, 462 F.3d at 1077. First, the Court considers whether 1996 *Lightah* and *Spark the Fire* are substantially similar. Then the Court will conduct the same analysis with 2009 *Lighter* and *Spark the Fire*.

A. **Substantial Similarity between 1996 *Lightah* and *Spark the Fire***

The Court will look at Features A, B, and C individually to determine whether each factor goes towards showing substantial similarity.

Feature A does not show substantial similarity between 1996 *Lightah* and *Spark the Fire*. As discussed above, Feature A has three main components: (1) both songs share a distinctive pronunciation and rhyming that is different from standard English; (2) the lyrics "light-ah" and "fi-ah" are found on beat four in both songs; and (3) both songs share similar rhythms. Finell Report at 5. First, the distinctive pronunciation of the words "light-ah" and "fi-ah" does not demonstrate similarity. As the unrebutted report of Professor Morgan shows, pronouncing words that end in an "er" with an "ah" sound is a common practice in African American Vernacular English ("AAVE"). Morgan Decl. ¶ 7. This practice pre-dates 1996 *Lightah* and is a staple in rap and hip hop music, as well as other types of media. Morgan Decl. ¶¶ 8-9. And deleting verbs—thus turning "who's got" into "who got"—is another common AAVE practice. *Id.* ¶ 11. It is uncontroverted that such pronunciation of words in AAVE is an unprotectable scènes à faire. *See Swirsky*, 376 F.3d at 850; *see, e.g.,* SUF ¶¶ 52, 192 (citing pronunciation of "who got" rather than "who's got" in the movie *Billy Madison*); ¶ 173 (pronunciation of "fire" and "lighter" in the Roots' "*Push Up Ya Lighter*").

Second, rhyming the words "light-ah" and "fi-ah" on beat four of both songs cannot be protected because the last word in the line of a song often rhymes. *See* SUF ¶

57; *Rentmeester*, 883 F.3d at 1118; *see also Steele v. Turner Broad. Sys., Inc.*, 646 F. Supp. 2d 185, 192 (D. Mass. 2009) ("A common rhyme scheme or structure does not qualify as original expression protectable under federal copyright law."). Morrill has not introduced any evidence showing that his use of rhyming technique is protectable. *See generally* SAF. Moreover, although the selection and arrangement of unprotectable musical elements are protectable, the words are used here in a different manner. *Cf. Skidmore v. Led Zeppelin*, No. 16-56057, at *15 (9th Cir. Sept. 28, 2018) (holding district court erred by not instructing jury that the original arrangement of otherwise non-protectable musical elements is protectable). The words "light-ah" and "fi-ah" overlap on beats three and four in *Spark the Fire*. Finell Report at 4. But "light-ah" and "fi-ah" appear only on beat four in 1996 *Lightah*. *Id.*

Third, the songs do not share the same rhythmic characteristics. Contrary to Defendants' contention, it is of little importance that in 1996 *Lightah* the second 16th note is tied to a 16th note whereas in *Spark the Fire*, the second 16th note is tied to an 8th note. MSJ at 12. There is not dissimilarity between rhythms just because every beat does not overlap. *Swirsky*, 376 F.3d at 847-48 ("Objective analysis of music under the extrinsic test cannot mean that a court may simply compare the numerical representations of pitch sequences and the visual representations of notes to determine that two choruses are not substantially similar, without regard to other elements of the compositions."). The alleged similarity between the two songs is the presence of a long-short-long rhythm. SUF ¶ 26. Nevertheless, the use of a long-short-long rhythm is too general to be protectable. *Smith v. Jackson*, 84 F.3d 1213, 1216 n.3 (9th Cir. 1996) (elements that are "common or trite" are unprotectable); *see also Batiste v. Najm*, 28 F. Supp. 3d 595, 616 (E.D. La. 2014) (use of chord progressions and tempos are unprotectable scènes à faire as these elements can be expressed only in a limited number of ways).

Even when the component elements of Feature A are viewed together, there is not substantial similarity. Feature A shows that the alleged similar rhythms and hooks appear

at different points in each song. Finnell Report at 4. And as discussed above, beat four focuses on different lyrics. *Id*.

There is also no substantial similarity as to Feature B. Morrill argues that both songs share "a similar rhythmic pattern in both a recurring vocal phrase in [1996 *Lightah*] and the hook phrases of [*Spark the Fire*.]" Opp'n at 15. Morrill claims that there are similar rhythmic values, emphasis of strong and weak beats, and syncopation. *Id.* Yet, the similar rhythms appear in different parts of each song (in the interlude and verses of 1996 *Lightah* but in the chorus of *Spark the Fire*); are associated with different lyrics; and have a different metric placement in each song. SUF ¶¶ 85-87. Simply put, the similar rhythms are used in vastly different ways in the two songs. Because the alleged similar rhythms are placed in different parts of the song, Feature B does not help show substantial similarity.[9] *See Funky Films*, 462 F.3d at 1077 (noting that sequence of events is a factor in considering substantial similarity).

Nor does Feature C—the presence of tritones—help show substantial similarity. Tritones are a common feature in modern music. SUF ¶ 106. Thus, the use of tritones is an unprotectable scènes à faire. *See Bastiste*, 28 F. Supp. 3d at 616. But even assuming one could copyright the use of tritones, protection would not be warranted here. The tritones in each song appear in different melodies and sound different.[10] *Id.* ¶ 102. The tritones for the songs, moreover, are produced by different instruments and are used to create different rhythms. *Id.* ¶ 100. The use of basic musical devices in different manners is not copyrightable.

Finally, even assuming that Features A, B, and C are present, there is no substantial similarity between 1996 *Lightah* and *Spark the Fire*. True, a combination of

---

[9] Defendants' argument that both songs lack pitch does not show dissimilarity. *See* MSJ at 14. Because both pieces are rap, they will lack pitch; in fact, that is why rhythm is so crucial to Feature B. *See* SAF ¶ 224.

[10] Indeed, because the tritones in each song begin and end on different pitches, the combination of Features A and C, and Features B and C do not help show substantial similarity. *See* Opp'n at 18. The fact that the hooks are played with tritones is irrelevant to show substantial similarity because hooks and tritones are basic elements of music. *See* SAF ¶ 223; *see also Bastiste*, 28 F. Supp. 3d at 616. Likewise, assuming Feature B exists and the rhythms are similar, using tritones—which begin and end on different pitches—to express a similar rhythm is not protectable.

unprotectable elements may qualify for copyright protection if they are arranged in an original manner. *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003). But "a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Id.* The Ninth Circuit has held that there is similarity when the overlap is voluminous. *See id.* (holding similarity of six different elements "lacks the quantum of originality needed to merit copyright protection."). Here, assuming the overlap of these three features, there is not such a great overlap to conclude both songs are substantially similar.

**B.     Substantial Similarity between 2009 *Lighter* and *Spark the Fire***

According to Morrill, 2009 *Lighter* and *Spark the Fire* share Features A, D, and E. Finell Report at 11. The Court considers whether each feature demonstrates substantial similarity.

Feature A does not help show similarity between 2009 *Lighter* and *Spark the Fire* for the same reason that it did not help with 1996 *Lightah*, as discussed above. But even assuming Feature A was protected expression, it could not be used to show substantial similarity between 2009 *Lighter* and *Spark the Fire* because the former is a derivative piece. *See* FAC ¶ 4. Copyright in a derivative work extends only to the material contributed by the author of such work, but it does not cover preexisting material. 17 U.S.C. § 103(b). Indeed "copyright protections for a derivative work are limited to the changes and contributions made." *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 990 (9th Cir. 2017).

Morrill then argues that Feature D—the presence of distinctive triplet rhythm found in the hook of 2009 *Lighter* and the verse of *Spark the Fire*—shows the pieces are substantially similar. *See* Opp'n at 21. But Feature D does not show similarity. Morrill concedes that triplets are common musical features, SUF ¶ 153; thus, the mere presence of triplets is unprotectable. *See Smith*, 84 F.3d at 1216 n.3. What is more, triplets are used in 2009 *Lighter* and *Spark the Fire* in vastly different ways. The triplets appear in

different places in each song, the triplets in each song have different rhythmic phrases, and the triplets are used to express different lyrics. SUF ¶¶ 147-51. Because Defendants' use of triplets is significantly different from Morrill's use, Feature D does not demonstrate substantial similarity.

As for Feature E, this also does not show substantial similarity. According to the Finell Report, 2009 *Lighter* and *Spark the Fire* share "important and notable structural similarity in its paring of the similar hook phrases." Finell Report at 16. True, both songs have similar lyrics: (1) 2009 *Lighter* has the phrase "Who got my light-ah/Who got my fi-ah" and (2) *Spark the Fire* has the phrase "Who got the light-ah/let's spark the fi-ah." *Id.* But the rhythm and structure of how these phrases are repeated are significantly different. SUF ¶¶ 158-59. Indeed, Features A and E are functionally identical because both focus on the same lyrics. *Id.* ¶ 156. Given that neither Features A, D, nor E help show substantial similarity, the undisputed evidence shows that 2009 *Lighter* and *Spark the Fire* are not substantially similar.

Based on the undisputed evidence, Morrill cannot show substantial similarity because he cannot satisfy the extrinsic test for either of the Protected Songs. Thus, Morrill cannot show that *Spark the Fire* violated either of his copyrights. *Funky Films*, 462 F.3d at 1076 ("A plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment, because a jury may not find substantial similarity without evidence on both the extrinsic and intrinsic tests." (quotation marks and citation omitted)).[11]

---

[11] Defendants also move for summary judgment on Morrill's claims for contributory and vicarious copyright infringement. MSJ at 24-25. They argue that these claims are "secondary liability" claims that require proof of underlying infringement. *Id.* (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 929-31 (2005)). Morrill does not contest this point. Opp'n at 24. Because the Court grants Defendants' motion for summary judgment on Morrill's underlying direct infringement claim, it does the same as to Morrill's secondary liability claims.

# V.
# CONCLUSION

In light of the foregoing, the Court:

1. **GRANTS** Defendants' motion for summary judgment on Morrill's claim for direct copyright infringement of 1996 *Lightah* and 2009 *Lighter*; and

2. **GRANTS** Defendants' motion for summary judgment on Morrill's claims for contributory and vicarious copyright infringement.

**IT IS SO ORDERED.**

DATED: October 2, 2018

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE

**Figure 1:**







-14-